





UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RIVERSIDE DIVISION



-------------------------------------------------------x

In re:                                  Chapter 11

CONSOLIDATED FREIGHTWAYS           Case # RS02-24284 MG
CORPORATION OF DELAWARE, et al.,
                                        (Substantially consolidated with Case
                                        Nos: RS02-24289MG, RS02-24287MG,
                                        RS02-24293MG, RS02-24294MG and
                                        RS02-24295MG)

                Debtor(s).
-------------------------------------------------------x

AMENDED
MEMORANDUM OPINION, CONCLUSION &
ORDER THEREON
(Amending Footnote 2)


        Aetna, Inc. ("Aetna"), along with other individual claimants[1], seek allowance of a

_____

        [1] The names of many of the individual claimants and the amount of their claims are set
forth in the One Hundred Eighty-Third Omnibus Objection to Certain Claims Filed in this Case,
the One Hundred Eighty-Fourth Omnibus Objection to Certain Claims Filed in this Case, and the
One Hundred Eighty-Fifth Omnibus Objection to Certain Claims Filed in this Case (collectively,
the "183rd, 184th, and 185th Omnibus Objections").

1

priority claim for unreimbursed medical claims.[2] K. Morgan Enterprises, Inc., in its

capacity as the trustee of the Trust for Certain Creditors of Consolidated Freightways

Corp. and Certain Affiliates (the "CF Trustee") has filed objections to the claims.  At the

hearing, Martin Meyers and Kim Mingo appeared on behalf of the CF Trustee, and

Ronald Pierce appeared for Aetna.  The Court, having considered the pleadings and

arguments of counsel, issues this Memorandum Opinion which shall constitute findings

of fact and conclusions of law[3] pursuant to Fed.R.Civ.P. 52, as incorporated into

Fed.R.Bankr.P. 7052, which is applicable to contested matters.  Fed.R.Bankr.P. 9014(c).

This Memorandum Opinion shall qualify as a final decision under 28 U.S.C. §158(d) for

purposes of appeal, although the final dollar amounts will be adjusted at future hearings.

## I.  Statement of Fact

The facts relating to the legal questions are undisputed.  Prior to the petition date,

Consolidated Freightways Corp. Of Delaware ("CFCD"), Consolidated Freightways

Corp. ("CFC"), Redwood Systems, Inc. ("Redwood"), Leland James Service Corp.

---

[2] Although this Memorandum Opinion deals specifically with the Objection to Proofs of
Claim filed by Aetna, Inc., the findings of fact and conclusions of law contained in this Opinion
and Order shall apply as law of the case to all individual claimants who have a similar §507(a)(5)
claim (formerly §507(a)(4) – see infra note 4).

[3] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby
adopted as such.  To the extent that any conclusion of law is construed to be a finding of fact, it is
hereby adopted as such.  The Court reserves the right to make additional findings and
conclusions as necessary or as may be requested by any party.

2

("Leland"), CF Airfreight Corp. ("CF Airfreight") and CF MovesU.com Inc. ("CF

MovesU") (collectively, the "Debtors") along with their non-debtor affiliates, operated

one of the largest less-then-truckload long-haul freight transportation companies in North

America. During the Labor Day holiday weekend, 2002, Debtors notified their

employees, union representatives, vendors and numerous other parties of an immediate

cessation of operations, and stopped all operations except certain limited operations

required to protect their assets and deliver the approximately $2.3 billion of freight that

was then in their systems. Employees (and, where applicable, their union representatives)

were notified immediately of the termination of their employment. The Debtors

commenced their bankruptcy cases on September 3, 2002. Subsequent to the bankruptcy

filings, Debtors were substantively consolidated for all purposes. Debtors' plan of

liquidation has been confirmed.

Prior to filing bankruptcy, Debtors maintained self-funded health insurance benefit

plans for its non-union employees and retirees (the "Benefit Plans"). Aetna administered

the Benefit Plans on Debtors' behalf. Debtors' employees and retirees (or their medical

providers) would submit medical claims to Aetna for reimbursement. Aetna would then

review the medical claims for allowance under the terms of the Benefit Plans, reimburse

the employees and retirees as appropriate and submit a reimbursement request to the

Debtors. Immediately prior to bankruptcy, Debtors terminated its Benefit Plans, which

left both Aetna and the individual employees and retirees with unreimbursed medical

3

claims.

On February 5, 2003, Aetna filed a proof of claim, identified as Claim #21170 on

the court's claims register, in an "unliquidated" amount.  On April 21, 2003, Aetna filed a

proof of claim, identified as Claim #26523 on the court's claims register, asserting a

priority claim in the amount of $1,498,026 based on "fees and costs related to the

administration of debtor's employee health benefit plan."

On April 10, 2006, the CF Trustee filed a partial objection to Aetna's two proofs

of claim, along with the 183rd, 184th, and 185th Omnibus Objections, arguing that

§507(a)(5)[4] of the Bankruptcy Code[5] provides for priority treatment "only for employees

and not for retired persons."[6]  The CF Trustee cited Crafts Precision Indus., Inc. v. U.S.

Healthcare, Inc. (In re Crafts Precision Indus., Inc.), 244 B.R. 178 (1st Cir. BAP 2000)

(hereinafter "Crafts Precision"), and concludes that "[c]laims based on retiree benefits or

the benefits of former employees are therefore not entitled to §507(a)[5] priority status

---

[4] Subsection 11 U.S.C. §507(a)(5) was previously numbered (a)(4), prior to the enactment
of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective in cases
commenced on or after October 17, 2005.  All references to subsections of §507 use the current
numbering.  At the time of the Debtors' bankruptcy filings, the relevant subsection relating to
employee benefit plans was numbered §507(a)(4), and the applicable dollar amount accorded
priority status was $4,650.00.

[5] Unless otherwise indicated, chapter, section and code references are to the Bankruptcy
Code, 11 U.S.C. §§ 101-1330, and rule references are to the Federal Rules of Bankruptcy
Procedure, Rules 1001-9036.

[6] Objection to Proofs of Claims filed by Aetna, Inc. ("Objection"), p.5, l.19-20.

4

and should be allowed only as unsecured claims."[7]

In its response, Aetna stated that there is a split in authority as to whether retiree benefits would be entitled to priority, citing <u>Allegheny Int'l, Inc. v. Metro. Life Ins. Co. (In re Allegheny Int'l)</u>, 138 B.R. 171 (Bankr. W.D. Pa. 1992), <u>aff'd</u>, 145 B.R. 820 (W.D. Pa. 1992). Aetna asserts that the Court should apply the broad ERISA definition of "employee benefit plan" to "confer priority for medical plan benefits paid to all participants."[8] According to Aetna, "the method of calculating the Section 507(a)[5] priority demonstrates that Congress intended to increase the priorities when it added Section 507(a)[5], not balance the priorities as <u>Crafts Precision</u> found."[9] Aetna further argues that there was nothing in §507(a)(5) that justified limiting "employees," as used in that section, to only current or active employees.[10]

In its reply, the CF Trustee argues that retirees are "not 'Employees' for purposes of §507(a)[5](B)(i)"[11] and that "[e]xpanding the priority to include retiree reimbursement claims would include, in the priority payout, claims that are clearly no longer employment

---

[7] <u>Objection</u>, p.5, l.20-25.

[8] <u>Claimant's Response to Objection to Proofs of Claims filed by Aetna, Inc.</u> ("Response"), p.2, l.24.

[9] <u>Response</u>, p.8, l.9-12.

[10] <u>Response</u>, p.8, l.24-26.

[11] <u>The CF Trustee's Reply to: Response by Howard Montgomery, Response by Milton E. Kohler, and Response by Aetna, Inc. ("Reply")</u>, p.5, l.16.

related."[12] The CF Trustee also asserts that "[i]ncluding retiree based reimbursement

claims entitled to priority dollars would also potentially lead to inconsistencies in the

application of the statute."[13]

Subsequent to oral argument and the issuing of the Court's tentative ruling, the

United States Supreme Court rendered its decision in Howard Delivery Serv., Inc. v.

Zurich Am. Ins. Co., 126 S.Ct 2105 (2006). Based thereon, the Court reopened this

matter for further briefing and argument, which has been held.

---

[12] Reply, p.8, 1.21-23.

[13] Reply, p.9, 1.7-8. The CF Trustee's detailed argument is as follows:

> The term employee is used three times in §507(a)[5](B)(i) and in the latter two instances the term is preceded by the word "such," as in "such employee". "Identical words used in different parts of the same statutory scheme are intended to have the same meaning." It can then only be assumed that each time the term is used, it is intended to carry the same meaning and the term employee must be used consistently throughout the statute to not include retirees.
> This creates the potential for an absurd result if retiree-based claims are included in the Claims. The first use of the term "employee" is as a multiplier of the statutory priority allowance amount (the "Gross Priority Amount"). The second use of the term reduces the Gross Priority Amount by the amount paid to "such employees" under §507(a)[4].
> The third use of the term further reduces the Gross Priority Amount by amounts paid on behalf of such "employee" to any other plan, thus accounting for any overlap of priority treatment. Including retirees in the plan's priority claim would lead to a potential incongruity under this third use of the term, as any overlap of retiree based claims found in competing §507(a)[5] plans would not be taken in to (sic) consideration and accounted for.

Id., p.9, 1.8-24 (citations omitted).

6

## II.   Applicable Cases

### A. *Crafts Precision Industries, Inc. v. U.S. Healthcare, Inc.*

There is unfortunately sparse case law on these particular issues in this circuit or any other.

In Crafts Precision Indus., Inc. v. U.S. Healthcare, Inc. (In re Crafts Precision Indus., Inc.), 244 B.R. 178 (1st Cir. BAP 2000), Crafts Precision Industries, Inc. ("Crafts") filed on June 20, 1995, along with its Chapter 11 petition, an emergency motion seeking authority to pay pre-petition wage-related claims, as well as approximately $132,000 in vacation payments. Based on Crafts' argument that there would be substantial risk of employees leaving the company if the entire amount of accrued vacation was not paid, the court approved all vacation payments.

After confirmation of the Debtor's Chapter 11 plan, on June 20, 1997, Crafts filed an adversary proceeding against U.S. Healthcare, Inc. ("USH") seeking recovery of $33,725.70 in alleged preferential pre-petition payment of premiums made by Crafts to USH pursuant to a contract whereby USH provided health insurance benefits to certain employees of Crafts, including retired employees, in exchange for the payment of premiums. USH filed a motion for summary judgment arguing that if it were required to return the payments, they would have a priority claim under §507(a)(5). Since priority claims were being paid in full under the plan, USH believed this would be a complete defense to the preference action. Crafts opposed USH's summary judgment motion

7

arguing that in determining the "number of employees covered" for purposes of

§507(a)(5)(B), retired employees should not be included.

The Bankruptcy Appellate Panel in the First Circuit affirmed the bankruptcy court,

which held that retired employees of the debtor were not included within the meaning of

the phrase "number of employees covered," as used in §507(a)(5) for unpaid

contributions to an employee benefit plan. The panel found that by adopting

§507(a)(5)(B)(ii), "Congress did not intend to increase the overall priority for

employment related claims." Crafts Precision, 244 B.R. at 183. The panel stated:

> [B]ecause the amount payable to employee benefit plans under the [fifth] priority
> is reduced dollar for dollar by the amount of payments to covered employees under
> the [fourth] priority for wages, the overall priority granted to employment related
> claims is not increased by the addition of §507(a)[5]. Including retired employees
> as employees under §507(a)[5] would, in every case where contributions are being
> made on behalf of retired employees, increase the overall amount of employment
> related priority claims. In fact, there would have to be a §507(a)[5] claim in every
> such case since the payments covered by §507(a)[4] do not pertain to retired
> employees. The only logical reading is that the employees counted in the
> §507(a)[5] cap are the same employees entitled to benefits under §507(a)[4].

Id. at 183-84 (citations omitted).

The panel also believed that retirees were not included in the ordinary meaning of

the word "employee," stating that Black's Law Dictionary defined "employee" as, "'a

person who works in the service of another person (the employer) under an expressed or

implied contract of hire under which the employer has the right to control the details of

work performance.'" Id. at 184 (citing Black's Law Dictionary 543 (7th Ed. 1999)).

Finally, the panel in Crafts Precision noted that Congress has shown it can

8

distinguish between the ordinary use of the term "employee" and "retired employees"

when it chooses to do so, as it did when Section 1114 of the Bankruptcy Code was added

in 1998 pursuant to the Retiree Benefits Bankruptcy Protection Act of 1988[14] ("Retiree

Benefits Act"). The panel addressed the legislative history of the Retiree Benefits Act,

which was "'designed to protect the health, life and disability benefits of *retirees* when

companies file Chapter 11 bankruptcy.'" Id. at 184 (citing 134 Cong. Rec. H3486 (daily

ed. May 23, 1988) (emphasis added)).

In Allegheny Int'l, Inc. v. Metro. Life Ins. Co., 145 B.R. 820 (W.D. Pa. 1992),

cited by Crafts Precision, the district court affirmed the bankruptcy court's decision that

insurance premiums and administrative fees owed to Metropolitan Life Insurance Co.,

which provided various benefits to employees and *retirees* of the Debtor, were properly

characterized as "contributions to an employee benefit plan." Id. at 823. The panel in

Crafts Precision opined that neither the district court nor the bankruptcy court "actually

addressed the issue before this panel and there is no way to discern from either opinion

whether retired employees were counted in the §507(a)[5] cap period." Crafts Precision,

244 B.R. at 184. Finally, the panel concluded that "[h]ad it chosen to do so, Congress

could have included retired employees under §507(a)[5]. Its decision not to do so

indicates an intent not to include retirees for the purpose of the provision." Id. Thus far,

no cases have addressed Crafts Precision's holding that the phrase "number of employees

---

[14] Pub. L. No. 100-334 (1988).

9

covered" does not include retired employees.

## B. *Howard Delivery Service, Inc. v. Zurich American Insurance Co.*

The U.S. Supreme Court recently rendered its decision in Howard Delivery Serv.,

Inc. v. Zurich Amer. Ins. Co., 126 S.Ct. 2105 (2006) (hereinafter "Howard Delivery").[15]

Petitioner Howard Delivery Service, Inc. ("Howard") was required to maintain

workers' compensation coverage for its employees. Howard contracted with Zurich

American Insurance Co. ("Zurich") to provide this insurance. After Howard filed a

Chapter 11 bankruptcy petition, Zurich filed an unsecured claim for approximately

$400,000 in premiums, asserting that they qualified as "contributions to an employee

benefit plan" entitled to priority under §507(a)(5). The Court of Appeals for the Fourth

Circuit held, in a divided opinion, that workers compensation premiums were covered

under §507(a)(5). Id. at 2110. The Supreme Court reversed and concluded that

"[a]lthough the question is close, we conclude that premiums paid for workers'

compensation insurance are more appropriately bracketed with premiums paid for other

liability insurance, e.g., motor vehicle, fire, or theft insurance, than with contributions

made to secure employee retirement, health, and disability benefits." Id. at 2109.

The Supreme Court made it clear what type of fringe benefits were encompassed

---

[15] This Court has kept this matter under advisement for approximately 6 months in the hope that some commentary might have been published on Howard Delivery to help act as a guide to the meaning of the various reasons supporting the majority opinion as it might affect the facts of this case. Unfortunately, this Court has found none to this date.

10

by §507(a)(5). "It is uncontested here that §507(a)(5) covers fringe benefits that complete

a pay package–typically pension plans, and group health, life and disability

insurance–whether unilaterally provided by an employer or the result of collective

bargaining." Id. at 2108. "Employer-sponsored pension plans, and group health or life

insurance plans, characteristically insure the employee (or his survivor) only. In contrast,

workers' compensation insurance, in common with other liability insurance in this regard,

e.g., fire, theft and motor vehicle insurance, shield the insured enterprise...." Id. at 2114.

The Court further espounded upon why workers compensation premiums should

not be covered under §507 (a)(5), stating "[i]n holding that claims for workers'

compensation insurance premiums do not qualify for §507(a)(5) priority, we are mindful

that the Bankruptcy Code aims, in the main, to secure equal distribution among creditors.

We take into account, as well, the complementary principle that preferential treatment of

a class of creditors is in order only when clearly authorized by Congress." Id. at 2109

(citations omitted); see also id. at 2116.

The Supreme Court discussed the history behind adjoining subsections of the

Bankruptcy Code – §507(a)(4)[16] and (5), finding that the "current Code's juxtaposition of

---

[16] Subsection 11 U.S.C. §507(a)(4) was previously numbered 11 U.S.C. §507(a)(3). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 renumbered the priority list so that (a)(3) became (a)(4). See supra note 4. At the time of the bankruptcy filing, §507(a)(4) was numbered (a)(3), the applicable dollar amount accorded priority status was $4,650.00, and the applicable time period was 90 days. Section 507(a)(4) currently provides, in part, as follows:

Fourth, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the

11

the wages and employee benefit plan priorities manifests Congress' comprehension that

fringe benefits generally complement, or "substitute" for, hourly pay." Id. at 2111. The

Supreme Court further noted that:

> Congress tightened the linkage of (a)(4) and (a)(5) by imposing a combined cap on
> the two priorities, currently set at $10,000 per employee. Because (a)(4) has a
> higher priority status, all claims for wages are paid first, up to the $10,000 limit;
> claims under (a)(5) for contributions to employee benefit plans can be recovered
> next up to the remainder of the $10,000 ceiling. No other subsections of §507 are
> joined together by a common cap in this way.

Id. at 2111-12 (citations omitted).

Finally, the Court opined that "[e]very claim granted priority status reduces the

funds available to general unsecured creditors and may diminish the recovery of other

claimants qualifying for equal or lesser priorities." Id. at 2116 (citations omitted). "To

give priority to a claimant not clearly entitled thereto is not only inconsistent with the

policy of equality of distribution; it dilutes the value of the priority for those creditors

Congress intended to prefer." Id. (citing In re Mammoth Mart, Inc., 536 F.2d 950, 953

(C.A.1 1976)).

The majority concluded its opinion by stating:

> In sum, we find it far from clear that an employer's liability to provide workers'
> compensation coverage fits the §507(a)(5) category "contributions to employee
> benefit plan...arising from services rendered." Weighing against such

---

petition or the date of the cessation of the debtor's business, whichever occurs first, for–
(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay
earned by an individual....

11 U.S.C. §507(a)(4).

categorization, workers' compensation does not compensate employees for work performed, but instead, for on-the-job injuries incurred; workers' compensation regimes substitute not for wage payments, but for tort liability.

Id.

### III. Discussion

**A. Whether retiree health benefits, paid as part of an employee benefit plan, should be afforded priority under §507(a)(5).**

Section 507(a)(5) adds to the wage priority scheme by extending priority status to

"unsecured claims for contributions to employee benefit plan."[17]  Section 507(a)(5) makes

it clear that Congress intended to extend priority status to forms of employee

compensation, other than wages.  See Howard Delivery, 126 S.Ct. at 2108; In re Saco

Local Dev. Corp., 23 B.R. 644, 645-46 (D. Me. 1982), aff'd 711 F.2d 441 (1st Cir. 1983);

Allegheny, 138 B.R. at 172-173.

The Code does not define the term "employee benefit plan."  Both the legislative

---

[17] Section 507(a)(5) provides:

Fifth, allowed unsecured claims for contributions to an employee benefit plan –
(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
(B) for each such plan, to the extent of –
    (i) the number of employees covered by each such plan multiplied by $10,000; less
    (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. §507(a)(5).

13

history and the U.S. Supreme Court confirm that "pension plans, health insurance plans

and life insurance plans" would be the type of employee benefit plan covered under the

scope of the priority. See Howard Delivery, 126 S.Ct. at 2108; see also 4 Collier on

Bankruptcy ¶507.06 [1], at 507-42 (15 ed. rev. 2005). Thus, since Howard Delivery, the

issue is no longer whether health benefit plans are included within the scope of

§507(a)(5), but *who* should be covered within such a health plan.

This Court believes, after reading Howard Delivery, and the legislative history,

that it was the intent of Congress to define the term "employee benefit plan" as used in

§507(a)(5), just as all justices of the Supreme Court held, to encompass health coverage

benefit plans negotiated for employees, and to the extent such plans included benefits for

the employee after retirement, this Court believes that they too would be afforded the

limited priority allowed in §507(a)(5). Accordingly, the term "employee benefit plan"

should not limit beneficiaries to include only active and current employees, but would

include *any participant* of an employee benefit plan. Medical claims incurred by both

active and retired employees established under Debtors' Benefit Plan is precisely the type

of employee benefit plan that would be covered under §507(a)(5).

This Court rejects the Crafts Precision ruling that retirees are not employees

entitled to priority under §507(a)(5) because retirees rendered no services during the

applicable 180-day period. Although the retirees may not have worked in the service of

the Debtors at the time of the bankruptcy filing, the retirees, when they first sought

14

employment with the Debtors, bargained for their positions and the ancillary benefits that go along with their employment. The retirees may have given up more pay in exchange for a more expansive retirement package. Indeed, the retirees contracted with the Debtors, whereby the Debtors would maintain a health insurance benefit plan for their employees, including paying for health benefits after the employee retired. To argue that retirees are not employees under §507(a)(5) is ingenuous. In addition, the term "services," found in §507(a)(5)(A)[18] refers to the insurer's services in providing insurance coverage on behalf of the employee within the 180-day time period, not the services – in terms of labor – performed by the employee. See In re Braniff, 218 B.R. 628, 631 (Bankr. M.D. Fla. 1998).

Congress, by enacting §507(a)(5), sought to establish a unique provision for individuals who were covered by employee benefit plans maintained by employers who have filed for bankruptcy. The legislative history of §507(a)(5) clearly establishes that Congress meant to provide qualified priority protection to certain fringe benefits. See Allegheny, 138 B.R. at 173 (stating "[t]he [legislative] bill recognizes the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands"). It thus makes no sense that Congress would not apply this expansive legislation to the most vulnerable of people who worked for the insolvent company – the retirees.

The case of Howard Delivery does not undercut this Court's holding. The Supreme

---

[18] See supra note 17.

15

Court in <u>Howard Delivery</u> merely specified *what* is covered under §507(a)(5), without

giving clarification as to *who* is covered. In that Opinion, the Court clearly sets forth that

§507(a)(5) covers ancillary benefits which supplement a pay package and asserts that the

"Code's juxtaposition of the wages and employee benefit plan priorities manifest

Congress' comprehension that fringe benefits generally complement, or "substitute" for,

hourly pay." <u>Howard Delivery</u>, 126 S.Ct. at 2111. Therefore, there is no question that

health benefit plans, including those relating to retirees, would clearly be entitled to

priority under §507(a)(5).


**B. Whether, under §507(a)(5)(B)(i), retirees should be counted in "the number of
employees covered by each such plan."**

The CF Trustee further asserts that that even if this Court concludes that

§507(a)(5)(A) could be interpreted to cover retiree health benefits, that §507(a)(5)(B)(i)

and (ii) make it clear that they are not added within the "number of employees" to

determine the aggregate amount of money available for §507(a)(5) claims. The CF

Trustee urges this Court to find, pursuant to the reasoning in <u>Crafts Precision</u>, as well as

the Supreme Court's statements concerning the "tightening" of §507(a)(4) and (5)[19], that

the total number of employees to be counted under the cap in §507(a)(5) is limited to the

number of employees entitled to benefits under §507(a)(4) (i.e., only active employees

---

[19] <u>See</u> <u>supra</u> pp. 11-12.

16

should be counted to determine the size of "the pot").[20]

The Howard Delivery decision leaves unanswered the question of whether *retirees* are counted as "employees" who are entitled to priority under §507(a)(5)(B). It is true that Justice Ginsburg stated that §507(a)(4) and (a)(5) were directly linked by the imposition of a "combined cap on the two priorities," citing §507(a)(5)(B), and explaining that wage claims are paid first, and then "claims under (a)(5) for contributions to employee benefit plans can be recovered next up to the remainder of the $10,000 ceiling." Id. While Justice Ginsburg's discussion reaffirms the relationship between (a)(4) and (a)(5), this Court does not believe the Supreme Court was addressing the question of retirees, but merely demonstrating the connection to a wage package to show that including workers compensation obligations would erode the benefits under §507(a)(5) for pension and health plans.

This Court believes it would be inconsistent with the reasoning of the majority on what type of fringe benefits are covered to suggest that only active employees for which wages are paid under §507(a)(4), would be entitled to any leftover amounts under (a)(5) for contributions to employee benefit plans. Without additional clarification, this Court believes that the Supreme Court's general discussion, if held to limit who is covered only to active employees, would be inconsistent with its primary ruling of what kind of employee benefit plans are in fact covered. Accordingly, this Court believes the case of

---

[20] Reply, p.10, l.7-8.

17

Howard Delivery does not answer the question of whether *retiree* benefits, paid as part of

an employee benefit plan, should or should not be counted in the §507(a)(5)(B)

calculation.

Under Crafts Precision, the panel believed that the overall amount of employee-

related priority claims should only be counted based on the 35 active employees covered

by §507(a)(4), and not on a total of 50 employees, including the 15 retired employees.

Otherwise, the panel reasoned, the 35 active employees could potentially recapture a

greater amount than what was intended under §507(a)(5), since they would be receiving

not only their §507(a)(4) claims, but also share in a pool of money calculated in the

aggregate amount of participating employees including retired employees. However, this

interpretation could mean that little or no additional rights would be afforded to other

active employees or retirees under §507(a)(5) as the pool of funds could be substantially

consumed by the §507(a)(4) claims, as discussed infra. Therefore, this Court cannot find

that it was the intent of Congress to punish retirees in this manner.

First and foremost, a plain reading of the statute does not support Crafts

Precision's view. The relevant statutory language is:

> Fifth, allowed unsecured claims for contributions to an employee benefit plan –
> (A) arising from services rendered within 180 days before the date of the filing of
> the petition or the date of the cessation of the debtor's business, whichever occurs
> first; but only
> (B) *for each such plan*, to the extent of –
> > (i) the number of employees covered *by each such plan* multiplied by
> > $10,000; less
> > (ii) the aggregate amount paid to *such employees* under paragraph (4) of this

subsection, plus the aggregate amount paid by the estate on behalf of *such employees* to any other employee benefit plan.

11 U.S.C. §507(a)(5) (emphasis added).

Subsection (B)(i) fails to provide a time period applicable to determine "the number of employees covered by each such plan." In re Braniff, 218 B.R. 628, 635 (Bankr. M.D. Fla. 1998). This subsection is merely a continuation of the phrase in the preceding sentence. Reading §507(a)(5) in its entirety, it is clear that the "number of employees covered by each such plan" means all employees who were covered under an employee benefit plan in the applicable 180-day period. As such, a plain reading of subsection (B)(ii) indicates that the phrase "such employees" should be read to include all employees which were covered by any employee benefit plan that was in effect pre-petition. See Braniff, 218 B.R. at 634.

To illustrate, in our case, if only active employees were counted in the cap, and assuming there are 3000 active employees, there would be a pot of $13,950,000 (3000 x $4,650[21]). If there were $11 million of §507(a)(4) claims, that pot would shrink to $2.95 million. Assuming that §507(a)(5) claims total $8 million, for all employees, whether active or retired, they would be paid pro rata, sharing the approximately $2.95 million, with the remainder being allowed as a general unsecured claim. However, if retired individuals were included as employees in the cap, and assuming there are an additional

---

[21] At the time of the Debtors' bankruptcy filings, the applicable dollar amount was $4,650. It is currently $10,000.

19

3000 retirees, there would be a pot of $27,900,000 (6000 x $4650). Accordingly, all

claims under §507(a)(5) for active and retired employees, which total $8 million, would

be paid in full. ($27,900,000 less $11 million paid = $16,900,000 available).

Second, and more importantly, if retirees are not included in the §507(a)(5) cap,

along with active employees, companies will be encouraged to terminate employee

benefit plans, as to retirees, just before filing bankruptcy. Retirees could either be left

with no priority claims of any kind, since they are not entitled to any §507(a)(4) claims, or

have only a limited §507(a)(5) claim, to the extent they will receive a pro rata share along

with active employees of a pot substantially consumed by active employees' §507(a)(4)

priority claims. By excluding retirees from the §507(a)(5) cap, active employees will also

have to share their claim under §507(a)(5) with retired employees, thus drastically

reducing the pool from which active employees rely. The result may also encourage

active employees to leave a company on the verge of bankruptcy.

Third, to include retirees in the §507(a)(5) cap appears to be consistent with the

intent of Congress. Section 1114 was added to the Bankruptcy Code by the Retiree

Benefits Act to protect the interests of retirees of Chapter 11 debtors. The Retiree Benefit

Act was enacted by Congress as a response to the mammoth bankruptcy case of LTV

Corporation, which terminated the health and life insurance benefits of its retirees upon

filing of Chapter 11 bankruptcy. See In re Ionosphere Clubs, Inc., 134 B.R. 515, 521

(Bankr. S.D.N.Y. 1991). See generally In re A.C.E. Elevator Co., Inc., 347 B.R. 473

(Bankr. S.D.N.Y. 2006); In re Tower Automotive, Inc., 2006 US Dist. LEXIS 91958

(Bankr. S.D.N.Y. 2006). To provide additional protection to retiree benefit claims,

§1129(a)(13)[22] was added to require that the plan provide for the continued funding of

retiree benefits at the level set by agreement or court approval for the duration the debtor

has obligated itself. In addition, the payment of retiree benefits was given administrative

expense status under §503[23], and retiree benefit claims were excluded from the limitations

of §502(b)(7)[24]. Congress has clearly demonstrated its intent to protect retiree benefits.

---

[22] Section §1129(a) states:

The court shall confirm a plan only if all of the following requirements are met:

....
(13) The plan provides for the continuation after its effective date of payment of all
retiree benefits, as that term is defined in section 1114 of this title, at the level established
pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to
confirmation of the plan, for the duration of the period the debtor has obligated itself to
provide such benefits.

11 U.S.C. §1129(a)(13).

[23] Section 1114(e)(2) provides: "any payment for retiree benefits required to be made
before a plan confirmed under section 1129 of this title is effective has the status of an allowed
administrative expense as provided in section 503 of this title." 11 U.S.C. §1114(e)(2).

[24] Section 502(b) provides:

(b) [I]f such objection to a claim is made, the court...shall determine the amount of such
claim...and shall allow such claim...in such amount, except to the extent that--
(7) [I]f such claim is the claim of an employee for damages resulting from the termination
of an employment contract, such claim exceeds--
    (A) the compensation provided by such contract, without acceleration, for one
    year following the earlier of --
        (i) the date of the filing of the petition; or
        (ii) the date on which the employer directed the employee to terminate, or
        such employee terminated, performance under such contract; plus
    (B) any unpaid compensation due under such contract, without acceleration, on

While this Court recognizes that applying §1114 to liquidating Chapter 11 cases can result in the dimunition of a portion of the estate's assets that could be paid to general unsecured creditors, it cannot ignore the congressional intent behind the enactment of §1114. Senator Metzenbaum, in support of §1114 legislation, stated that the measure "sends a strong and powerful message to companies which make promises to their workers - you cannot expect to use the bankruptcy court as a way of reneging on retiree promises." 134 Cong. Rec. S6823, S6825 (daily ed. May 26, 1988) (statement of Sen. Metzenbaum). He further opined that "[b]ankruptcies are painful for workers, communities, small business suppliers and others. The burden of turning a company around should not rest on the backs of retirees. They deserve a fair shake from the companies they build (sic) and from the law governing the reorganization process." Id. (emphasis added).

Lastly, retired employees are the most vulnerable and worst-off of creditors of a Chapter 11 debtor. Trade creditors, even small businesses, can continue to solicit business or cover their losses through tax deductions. Active employees may be able to find new jobs and can continue to work. However, retired individuals are completely out of the workforce. If not for the happenstance of savings, they will solely be relying on the company they helped build at a negotiated wage and benefits package to ease them

---

the earlier of such dates;....

11 U.S.C. §502(b)(7).

22

through retirement. The majority of retirees are over 65 years of age. To deny their

medical and insurance claims could force many retiree into poverty or bankruptcy.

Retirees, by their age alone, are at a severe disadvantage in terms of obtaining quality

health care and insurance. As such, this Court believes that it was the intent of Congress

to include retirees in the limited amount of priority afforded to the "number of employees

covered by each such plan" under §507(a)(5)(B)(i).


### C. Is §507(a)(5)(B)(i)'s monetary cap applicable to each individual employee or is there an aggregate recovery ceiling?

At the hearing, the Court also raised the question of whether there was a dollar

amount limit imposed on each employee under §507(a)(5)(B)(i). Section 507(a)(5) sets

out a formula for calculating the allowable amount paid for contributions to an employee

benefit plan, by multiplying the number of employees covered by each such plan by

$4650[25]. This potential gross amount allowance is then reduced by (a) the aggregate

amount paid to such employees under §507(a)(4); and (b) the aggregate amount paid to

any other employee benefit plan on behalf of such employees.

The majority of the cases have found that a plain reading of the statute contains no

per-employee limitation. "Once an aggregate amount is determined,... [it] is not further

limited by the [$4650.00] wage priority which may be available to individual employees

---

[25] At the time of the Debtors' bankruptcy filings, the applicable dollar amount was $4,650.

pursuant to §507(a)(3) [currently §507(a)(4)]." See In re Edgar B., Inc., 200 B.R. 119,

122-24 (M.D.N.C. 1996); see also In re P.C. White Truck Line, Inc., 22 B.R. 540, 541

(Bankr. M.D. Ala. 1982); Braniff, 218 B.R. at 635.  To the extent that certain cases have

applied a per employee limit, they have been overruled by Braniff. See Braniff, 218 B.R.

at 635 (overruling In re B. & F. Constr., Inc., 165 B.R. 745 (Bankr. D.R.I. 1994); In re

Nat'l Bickford Foremost, Inc., 116 B.R. 351 (Bankr. D.R.I. 1990); In re Unimet, 100 B.R.

881 (Bankr. N.D. Ohio 1988)).

## IV.  Conclusion

In conclusion, this Court believes it could not have been the intent of Congress to

enact §1114 to protect the rights of retirees, whose rights have been diminished or lost,

and then not include them as priority claimants under §507(a)(5).  Both the legislative

history and the public policy behind §507(a)(5) compel this Court to include retired

employees within the cap amount.

24

## ORDER

Therefore, it is:

ORDERED that the claims of Aetna and similarly situated employees shall be allowed priority status pursuant to the limitations of 11 USC §507(a)(5) et al., and in conformance with this Memorandum Opinion; it is further

ORDERED that this Order shall constitute a final Order; it is further

ORDERED that the Court reserves jurisdiction to determine the amount of the individual and aggregate priority claims in a further court order in conformance with this final Order.

DATED:   April 25,  2007

_____
Hon. Mitchel R. Goldberg
United States Bankruptcy Judge

## NOTICE OF ENTRY & CERTIFICATE OF MAILING

Notice is hereby given that the foregoing Memorandum Opinion, Findings, Conclusions and Order was entered on the date stamped above; that conformed copies of same were mailed to the parties listed below including but not limited to attorneys for said parties if so represented by counsel, or, if not represented by counsel, then to the parties individually and to such other parties in interest as designated by this Court.

DATED: **APR 2 6 2007**

JON D. CERETTO, CLERK

BY: _____
                Deputy Clerk

**SERVICE LIST:**

Office of the U.S. Trustee
Suite 300
3685 Main Street
Riverside, CA 92501

Bruce S. Schildkraut, Esq.
Office of the U.S. Trustee
26th Floor
725 S. Figueroa Street
Los Angeles, CA 90017

Robert L. Carlton, Esq.
Martin P. Meyers, Esq.
Keith J. Nichols, Esq.
Sussman Shank LLP
1000 SW Broadway
Suite 1400
Portland, OR 92705-3089

Ronald B. Pierce, Esq.
Gregory E. Woodard, Esq.
Sedgwick, Detert, Moran & Arnold LLP
Seventh Floor
3 Park Plaza
Irvine, CA 92614-8540

Kim M. Mingo, Esq.
CFC Trust
Suite 205
805 Broadway
Vancouver, WA 98660

Alice Whitfield
Poorman-Douglas Corp.
10300 SW Allen Boulevard
Beaverton, OR 97005

David Neale, Esq.
Levene  Neale Bender Rankin & Brill LLP
Suite 1700
10250 Constellation Boulevard
Los Angeles, CA 90067

David B. Rowe
Aetna, Inc.
151 Farmington Avenue
RE4K
Hartford, CT 06156

Aetna, Inc.
C/o Ronald B. Pierce
Sedgwick Detert Moran & Arnold LLP
17th Floor
3 Park Plaza
Irvine, CA 92614-33898

Milton E. Kohler
1831 NW 96th Avenue
Plantation, FL 33322-5626