FILED

NOV 30 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

ENTERED

NOV 30 2009

Jon D. C.......... of Court
CENTRAL DISTRICT OF CALIFORNIA
BY:

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

|  |  |
|---|---|
| In re: | Case No. 6:02-bk-24284-PC |
|  | Chapter 11 |
| CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, et al., | **MEMORANDUM DECISION** |
|  | Date:  October 27, 2009 |
|  | Time:  9:30 a.m. |
|  | Place:  United States Bankruptcy Court |
|  | Courtroom # 304 |
| Debtors. | 3420 Twelfth Street |
|  | Riverside, CA 92501 |

Before the court is the motion of United States Fidelity and Guaranty Company, USF&G Specialty Insurance Company, and Fidelity and Guaranty Insurance Company (collectively, "USF&G") for reconsideration of this court's Order Granting Motion for Order Disallowing With Prejudice Claim No. 027551 filed by the United States Fidelity and Guaranty Company, USF&G Speciality Insurance Company, and Fidelity and Guaranty Insurance Company and Sustaining Objection to Claim ("Order") entered on September 9, 2009. K. Morgan Enterprises, Inc. (the "Trustee"), as trustee under the Trust for Certain Creditors of Consolidated Freightways Corporation and Certain Affiliates (the "Debtors") created pursuant to the Debtors' Consolidated Plan of Liquidation, dated July 1, 2004 (As Amended) (the "Plan"), confirmed by order entered on November 22, 2004, and the Oversight Committee (as such term is defined in the Plan) (the "Committee," and together with the Trustee, collectively, the "Objecting Parties") oppose the motion. At the hearing, Craig H. Millett appeared for USF&G and David L. Neale appeared for the Objecting Parties. The court, having considered the pleadings, evidentiary record,[1] and

---

[1] The Joint Request of the Trust for Certain Creditors of Consolidated Freightways Corporation and Certain Affiliates and the Oversight Committee to Strike and Evidentiary Objections to Exhibit "A" Filed in Support of the Motion of United States Fidelity and Guaranty Company, USF&G Speciality Insurance Company, and Fidelity and Guaranty Insurance Company for

1   arguments of counsel, makes the following findings of fact and conclusions of law[2] pursuant to

2   F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to contested matters by FRBP

3   9014(c).[3]

4                           I. STATEMENT OF FACTS

5          On September 3, 2002, Debtors filed their respective voluntary petitions under chapter 11

6   of the Code.[4]  Debtors managed their affairs as debtors in possession until the Plan was

7   confirmed by order entered on November 22, 2004.  Until it ceased operations shortly before the

8   petition date, Debtors operated one of the world's largest less-than-truckload ("LTL")

9   transportation networks.  Debtors employed approximately 18,500 employees who provided LTL

10  transportation, air freight forwarding, and supply chain management services throughout the

11  United States, Canada, and Mexico, as well as international freight services between the United

12  States and 80 countries.  Debtors operated nearly 37,000 vehicles, including inter-city tractors

13  and trailers and pick-up and delivery units, which connected a web of freight terminals, metro

14  _____

15  Reconsideration of Order Disallowing with Prejudice Claim No. 027551 is granted.  USF&G's
    Exhibit A is stricken in its entirety from consideration in conjunction with USF&G's motion for
16  reconsideration.

17  [2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby
    adopted as such.  To the extent that any conclusion of law is construed to be a finding of fact, it is
18  hereby adopted as such.

19
    [3] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
20  Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to its amendment by the Bankruptcy Abuse and
    Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to
21  the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal
    Rules of Civil Procedure ("F.R.Civ.P.").
22

23  [4] Since the filing of the petitions, the bankruptcy estates of Consolidated Freightways
    Corporation of Delaware (Case No. 6:02-bk-24284) and its subsidiaries and affiliates, CF
24  Airfreight Corporation (Case No. 6:02-bk-24287), Consolidated Freightways Corporation (Case
    No. 6:02-bk-24289), CF MovesU.com Incorporated (Case No. 6:02-bk-24293), Leland James
25  Service Corporation (Case No. 6:02-bk-24294), and Redwood Systems, Inc. (Case No. 6:02-bk-
    24295) have been jointly administered pursuant to an Order Directing the Joint Administration of
26  the Debtors' Chapter 11 Cases entered on September 3, 2002.

27
                                    - 2 -

1  centers, and regional consolidation centers spread across the continent.

2  A. The Insurance Policies.

3        In conjunction with its operations, Debtors obtained certain transportation, workers'

4  compensation, and general liability insurance policies from USF&G. The policies included

5  terms for self-funded retentions ("SFRs"), *i.e.,* provisions requiring the Debtors to be responsible

6  for the initial payment of losses on behalf of USF&G up to a certain amount depending upon the

7  terms of the individual policy.[5] To acquire the policies from USF&G, Debtors executed an

8  Indemnity Agreement which made them responsible for the SFRs and obligated them to provide

9  collateral to USF&G in the amount of $87,000,000 consisting of (1) a $25,000,000 surety bond

10  issued by Lumbermens Mutual Casualty Company ("Kemper"); and (2) letters of credit issued by

11  ABN Amro Bank in the aggregate amount of $62,000,000. The policies expired by their terms

12  on October 1, 2002.

13        On November 5, 2002, the court set a deadline of February 7, 2003, for the filing of

14  proofs of claim by pre-petition creditors in the case. On February 7, 2003, USF&G filed a proof

15  of claim against each of the Debtors (collectively, "Claim # 24116) asserting an "unliquidated"

16  claim against the Debtors for alleged damages or losses under the policies. Claim # 24116 was

17  accompanied by an addendum, which stated:

18        USF&G asserts that the portion of its claim that relates to workers' compensation
       coverage that USF&G provided to [Debtors'] employees within 180 days before the
19     Petition Date should be allowed as a fourth priority claim under 11 U.S.C. § 507(a)(4) as
       a contribution to an employee benefit plan. The portion of USF&G's claim under 11
20     U.S.C. § 507(a)(4) is unliquidated as of the date hereof.

21        USF&G further asserts that a portion of its claim is entitled to administrative
       expense priority under 11 U.S.C. §§ 503(b) and 507(a)(1). Certain of the Policies
22

23
---

24  [5] Debtors were obligated to reimburse USF&G (a) for the first $5,000,000 paid or payable for
    each accident covered by the transportation policies, including claim expenses; (b) for the first
25  $1,000,000 paid or payable for each incident covered by the general liability policies, including
    claim expenses; and (c) for the first $2,000,000 paid or payable for each accident covered by the
26  workers' compensation policies, including claim expenses, and $2,000,000 for each employee,
    by disease.
27

1    remained in effect from the Petition Date through October 1, 2002. However, to date,
[Debtors have] not made any payments to USF&G for obligations under the Indemnity

2    Agreement and the Policies for the post-petition period. These post-petition insurance
obligations constitute reasonable and necessary expenses of preserving [Debtors'] estate.

3    The portion of USF&G's claim under 11 U.S.C. §§ 503(b) and 507(a)(1) is unliquidated
as of the date hereof.

4

5        USF&G asserts the remaining portion of its claim under the Policies and the
Indemnity Agreement as an unsecured, non-priority claim. The unsecured, non-priority

6    portion of USF&G's claim is unliquidated as of the date hereof.

7        USF&G reserves all rights to supplement and amend its proofs of claim as the
losses under the Policies and Indemnity Agreement become known and to file any further

8    pleadings necessary to preserve its claim.[6]

B. The Administrative Expense Claim.

9

10        On February 2, 2004, USF&G filed a motion seeking allowance and payment as an

11    administrative expense the sum of $277,351.02 allegedly paid for post-petition claims under the

12    policies between September 3, 2002, and September 30, 2002, and authority to make regular

13    motions for payment as further post-petition losses were paid. Debtors opposed the motion. The

14    dispute was not resolved until approximately three years later. On December 6, 2006, USF&G

15    and the Trustee stipulated to allowance of an administrative expense claim in the amount of

16    $1,250,000. USF&G and the Trustee further stipulated that "USF&G shall not assert or be

17    entitled to any [other] administrative expense claim under 11 U.S.C. § 503 in these chapter 11

18    cases or against the Debtors, the Trust or the Trustee,"[7] and further, that "[t]he amount of

19    USF&G's claims asserted in the Proofs of Claim shall be reduced by the amount of the Allowed

20    Administrative Expense Claim."[8] USF&G's allowed administrative expense claim was paid by

21    the Trustee.

22

23    [6] Addendum to Proof of Claim by the United States Fidelity and Guaranty Company, USF&G
Specialty Insurance Company, and Fidelity and Guaranty Insurance Company, p.3.

24    [7] Stipulation Between the Trustee, on Behalf of the CF Trust and the Debtors, and United States
Fidelity & Guaranty Company Regarding Allowance of Administrative Expense Claims, p.3,

25    l.19-21.

26    [8] Id. at p.3, l.24-25.

27

-4-

C. _The Balance of the Claim._

On June 24, 2008, the Trustee filed an objection to Claim # 24116 seeking disallowance of the claim on the grounds that (1) USF&G was not entitled to an unsecured priority claim because workers' compensation premiums were not entitled to priority under § 507(a)(4) as a matter of law; (2) USF&G's administrative claim had been paid; and (3) USF&G had yet to amend its claim, notwithstanding the Trustee's requests that it do so, to reflect its receipt of $1,250,000 in payment of its administrative expense claim and $87,000,000 in proceeds from the Kemper surety bond and ABN Amro Bank letters of credit, and to document the remaining losses or damages claimed against the estate. The Trustee's objection had been preceded by nearly 13 months of informal negotiations between counsel for the Trustee and USF&G regarding the validity and amount of the claim.

On August 26, 2008, USF&G responded to the objection, admitting that its administrative claim had been satisfied, that no part of its remaining claim was entitled to priority under § 507(a)(4), and that it had received $87,000,000 in proceeds from the surety bond and letters of credit. USF&G argued, however, that it was entitled to an allowed unsecured nonpriority claim in the amount of $115,780.919 which represented the balance of the claim after a reduction for the $1,250,000 paid pursuant to the stipulation. USF&G maintained that it was not required to reduce its claim by the amount received from liquidation of its collateral; and that, notwithstanding liquidation of the collateral, it was entitled to receive distributions on the claim until paid in full by the estate.

On April 7, 2009, the court sustained the Trustee's objection and disallowed USF&G's § 507(a)(4) claim, but permitted USF&G to file an amended claim to assert an unsecured nonpriority claim in a specific amount not later than May 8, 2009, without prejudice to the Trustee's right to object to the amended claim. USF&G filed an amended claim ("Claim # 027551") asserting an unsecured nonpriority claim in the amount of $115,780,919 on May 8, 2009.

D. <u>The Amended Claim.</u>

On July 23, 2009, the Trustee filed a motion seeking disallowance of Claim # 027551 with prejudice. The Trustee urged disallowance of Claim # 027551 on four grounds: (1) USF&G's claim was limited to paid losses under the Indemnity Agreement according to Connecticut law; (2) even if USF&G had a claim for paid losses, USF&G could only assert a claim for paid losses that exceeded the collateral under the terms of the Indemnity Agreement; (3) USF&G had failed to satisfy its procedural and substantive burden to establish the validity and the amount of the amended claim; and (4) to the extent that USF&G drew down and held proceeds of the collateral, USF&G had improperly earned interest on such proceeds. USF&G was properly served with a copy of the motion and notice of the hearing. The deadline for USF&G to file a response in opposition to the motion was August 18, 2009. USF&G did not file a response in opposition to the motion nor appear at the hearing on September 1, 2009.

At the hearing, the court disallowed USF&G's Claim # 027551 based upon detailed findings of fact and conclusions of law with respect to each of the grounds asserted in the Trustee's motion. On September 1, 2009, USF&G's counsel was properly served with a copy of the proposed order disallowing USF&G's claim. The Order was entered on September 9, 2009. USF&G's counsel was given notice of the entered Order on September 10, 2009. USF&G did not appeal the Order. The deadline to file a notice of appeal from the Order expired on September 21, 2009.

On September 29, 2009, USF&G filed its motion for reconsideration of the Order pursuant to § 502(j) alleging that its failure to file a response in opposition to the Trustee's claim objection and to appear at the hearing resulted from the excusable neglect of its counsel, Bingham McCutchen LLP. On October 13, 2009, the Objecting Parties filed their response in opposition to the motion. USF&G filed its reply on October 20, 2009. After a hearing on October 27, 2009, the matter was taken under submission.

1        II.  DISCUSSION

2        This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and

3    1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue

4    is appropriate in this court.  28 U.S.C. § 1409(a).

5    A.  Reconsideration of an Order Disallowing a Proof of Claim.

6        Section 502(j) of the Code states that "[a] claim that has been allowed or disallowed may

7    be reconsidered for cause."  11 U.S.C. § 502(j).  Section 502(j) is implemented by Rule 3008,

8    which states:

9        "A party in interest may move for reconsideration of an order allowing or disallowing a
         claim against the estate.  The court after a hearing on notice shall enter an appropriate
10       order."

11    FRBP 3008.  There is no time limit for filing a motion for reconsideration under § 502(j).  Levoy

12    v. U.S. (In re Levoy), 182 B.R. 827, 832 (9th Cir. BAP 1995).  When a motion for

13    reconsideration is filed after the time for appeal of the order disallowing the claim has expired,

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1   the court must look to F.R.Civ.P. 60(b)[9], as applied to bankruptcy cases by FRBP 9024,[10] for the

2   appropriate standard to reconsider the claim under § 502(j). See, e.g., United Student Funds, Inc.

3   v. Wylie (In re Wylie), 349 B.R. 204, 209 (9th Cir. BAP 2006) ("When reconsideration under

4   Rule 3008 is sought after the 10-day appeal period has expired, the motion is subject to the

5   constraints of FRCP 60(b) as incorporated by Rule 9024."); S.G. Wilson Company, Inc. v.

6   Cleanmaster Indus., Inc. (In re Cleanmaster Indus., Inc.), 106 B.R. 628, 630 (9th Cir. BAP 1989)

7   ("[W]here the time for appeal has expired, a motion to reconsider should be treated as a motion

---

[9] Rule 60(b) states:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> > (4) the judgment is void;
> > (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> > (6) any other reason that justifies relief.

F.R.Civ.P. 60(b).

[10] Rule 9024 states:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed under § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

FRBP 9024.

1    for relief from judgment under Bankruptcy Rule 9024."). Furthermore, "the merits of the claim

2    objection are no longer fair game unless the claimant first establishes a good excuse, cognizable

3    under FRCP 60(b), for its failure to timely contest the objection." Wylie, 349 B.R. at 210; see

4    Casey v. Albertson's Inc., 362 F.3d 1254, 1261 (9th Cir. 2004) (stating that "the merits of a case

5    are not before the court on a Rule 60(b) motion").

6        USF&G's motion for reconsideration is predicated only on F.R.Civ.P. 60(b)(1), which

7    authorizes the court to relieve a party from an order due to mistake, inadvertence, surprise, or

8    excusable neglect.  USF&G argues that its failure to file a response in opposition to the Trustee's

9    claim objection and to appear at the hearing on September 1, 2009, was due to the excusable

10    neglect of its counsel, Bingham McCutchen LLP ("Bingham").

11        "Rule 60(b)(1) guides the balance between the overriding judicial goal of deciding cases

12    correctly, on the basis of their legal and factual merits, with the interest of both litigants and the

13    court in the finality of judgments." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 695

14    (9th Cir. 2001); see Cotto v. United States, 993 F.2d 274, 277 (1st Cir. 1993) ("Rule 60(b) seeks

15    to balance the importance of finality against the desirability of resolving disputes on the

16    merits.").

17        Prior to the Supreme Court's decision in Pioneer Inv. Servs. Co. v. Brunswick Assocs.

18    Ltd. P'ship., 507 U.S. 380 (1993), the Ninth Circuit enforced a strict standard for determining

19    excusable neglect.  "For years, the common understanding was that this term only covered

20    situations beyond an attorney's control, not negligence on the part of counsel." Bateman v. U.S.

21    Postal Serv., 231 F.3d 1220, 1222 (9th Cir. 2000).  Inadvertence or mistake of counsel simply did

22    not constitute excusable neglect. See, e.g., Pratt v. McCarthy, 850 F.2d 590, 592 (9th Cir. 1988)

23    (stating that "[t]o find excusable neglect on these facts would be to run roughshod over our

24    existing precedent and the purpose of Rule 4(a)"); Alaska Limestone Corp. v. Hodel, 799 F.2d

25    1409, 1411 (9th Cir. 1986) (per curiam) (opining that "[i]nadvertence or mistake of counsel,

26    including that attributable to office staff, does not constitute excusable neglect under this

27

-9-

1  standard"); Oregon v. Champion Int'l Corp., 680 F.2d 1300, 1301 (9th Cir. 1982) (stating that

2  "[e]xtending the excusable neglect exception to clerical errors of counsel or counsel's staff

3  would be inconsistent with the Advisory Committee's intent to limit the exception to

4  extraordinary cases and would thwart the Rule's purpose of promoting finality of judgments").

5  Nor did ignorance of court rules constitute excusable neglect, even if the litigant had appeared

6  pro se. Swimmer v. Internal Revenue Serv., 811 F.2d 1343, 1345 (9th Cir. 1987).

7         Pioneer articulated "an equitable test to determine whether an attorney's neglect is

8  excusable" which changed the standard in the Ninth Circuit for divining excusable neglect.

9  Bateman, 231 F.3d at 1222. See, e.g., Pincay v. Andrews, 389 F.3d 853, 860 (9th Cir. 2004) (en

10  banc) (holding that the district did not abuse its discretion in applying the Pioneer factors to

11  determine excusable neglect and permit the late filing of a notice of appeal), cert. denied, 544

12  U.S. 961 (2005); Bateman, 231 F.3d at 1225 (reversing a district court's decision to deny relief

13  from a summary judgment under Rule 60(b)(1) given the failure to conduct the equitable analysis

14  required by Pioneer); Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1996)

15  (holding that "the equitable test set out in Pioneer applies to Rule 60(b) as well").

16  B.  Excusable Neglect

17         1. The Pioneer Case.

18         In Pioneer, Brunswick Associates, Ltd., Clinton Associates Limited Partnership, Ft.

19  Oglethorpe Associates Limited Partnership, and West Knoxville Limited Partnership

20  (collectively, "Brunswick"), creditors of Pioneer Investment Services Company ("Pioneer"),

21  received a "Notice for Meeting of Creditors" in Pioneer's chapter 11 bankruptcy setting a

22  creditors' meeting for May 5, 1989. The notice also contained a bar date of August 3, 1989, to

23  file proofs of claim in the case. Brunswick retained Marc Richards ("Richards") to represent

24  them in the bankruptcy. Brunswick delivered to Richards the notice and a file containing all

25  pertinent documents regarding their claims at least two months prior to the claims deadline.

26  Brunswick also specifically asked Richards whether there was a deadline to file claims, to which

27

- 10 -

1   Richards incorrectly responded that no such date had been set by the court.

2         On August 23, 1989, Brunswick filed its proofs of claim together with a motion under

3   Rule 9006(b)(1) seeking a 20-day enlargement of the deadline to file claims on the ground of

4   excusable neglect. FRBP 9006(b)(1). In support of the motion, Richards claimed that he did not

5   have access to his file and was unaware of the bar date because the deadline "came at a time

6   when he was experiencing 'a major and significant disruption' in his professional life caused by

7   his withdrawal from his former law firm on July 31, 1989." Id. at 384. The bankruptcy court

8   denied Brunswick's motion, finding that Richards had actual notice of the claims deadline and

9   that the reason for the delay was not outside his control. Id. at 385-86. The bankruptcy court

10  further found that Richards was negligent in failing to file the proofs of claim prior to the bar

11  date, stating that Richards' "actions indicated an indifference to the bar date and the orders of the

12  court." Brunswick Assocs. Ltd. P'ship. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.),

13  943 F.2d 673, 677 (6th Cir. 1991), aff'd, 507 U.S. 380 (1993). The district court affirmed.

14  Pioneer, 507 U.S. at 386.

15        The Court of Appeals for the Sixth Circuit reversed and remanded, holding that the

16  record supported a finding of excusable neglect. In so holding, the Sixth Circuit found "it

17  significant that the notice containing the bar date was incorporated in a document entitled 'Notice

18  for Meeting of Creditors'," and that creditors had not been given a specific notice of the claims

19  deadline on Form 16.[11] Brunswick Assocs., 943 F.2d at 678. The Sixth Circuit stated:

20          While we do not suggest that the court was obligated to notify creditors in precisely this
        form, the comparison between this Form 16 notice and the notice actually given in this

21          case suggests the dramatic ambiguity of the latter. This ambiguity is exacerbated by the
        fact that the notice was simply and inconspicuously labeled "Bar date" without any

22          reference to its significance as a deadline for the filing of proof of claims. Even persons
        experienced in bankruptcy might confuse such a label for other deadlines.

23

---

24  [11] Form No.16, Order for Meeting of Creditors and Related Orders, Combined With Notice

25  Thereof and of Automatic Stay is one of 35 official forms incorporated into the Bankruptcy
Rules and Official Forms prescribed by order of the Supreme Court on April 25, 1983, pursuant

26  to 28 U.S.C. § 2075. The Bankruptcy Rules and Official Forms became effective on August 1,

27  1983.

- 11 -

Id. (emphasis added).

The Supreme Court affirmed, holding that a finding of "excusable neglect" was "not limited strictly to omissions caused by circumstances beyond the control of the movant," but was an "elastic concept" that included, in appropriate circumstances, errors resulting from negligence, including inadvertence, mistake or carelessness. Pioneer, 507 U.S. at 392. The Court explained that the issue of whether admitted neglect can be excused is an equitable determination that incorporates all relevant factors, including (1) danger of prejudice to the non-movant; (2) length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Id. at 395. However, the Supreme Court reiterated in Pioneer that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." Id. at 392. The Court also reiterated that clients must be "held accountable for the acts and omissions of their chosen counsel." Id. at 396.

In reaching its conclusion in Pioneer, the Supreme Court gave "little weight" to Richards' excuse that he was "experiencing upheaval in his law practice at the time of the bar date." Id. at 398. The Court, like the Sixth Circuit, focused on the ambiguous form of the bar date notice, coupled with the lack of any evidence of bad faith, prejudice to the debtor, or delay in the judicial administration of the case, stating that:

> "the 'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' without any indication of the significance of the bar date, left a 'dramatic ambiguity' in the notification."

Id. at 398.

2. Pioneer's Application to USF&G's Claim of Excusable Neglect

Pioneer requires that the issue of excusable neglect be determined in the context of the particular case. Pincay, 389 F.3d at 859 (stating that the "question is whether there [is] enough in the context of [the] case to bring a determination of excusable neglect within the . . . court's discretion"). The burden of presenting facts demonstrating excusable neglect is on the movant.

- 12 -

1  Key Bar Inv., Inc. v. Cahn (In re Cahn), 188 B.R. 627, 631 (9th Cir. BAP 1995); In re Pac. Gas &

2  Elec. Co., 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004).  Because Pioneer's four factors are non-

3  exclusive, the court is permitted to take "account of all relevant circumstances surrounding the

4  party's omission" in making an equitable determination.  Pioneer, 507 U.S. at 395; see Briones,

5  116 F.3d at 382 n.2 (noting that "we will ordinarily examine all of the circumstances involved

6  rather than holding that any single circumstance in isolation compels a particular result regardless

7  of other factors").  Pioneer mandated a balancing test for divining excusable neglect, but Pioneer

8  did not assign the weight to be accorded by the court to each of its non-exclusive factors in

9  making an equitable determination.  Graves v. Rebel Rents, Inc. (In re Rebel Rents, Inc.), 326

10  B.R. 791, 803 (Bankr. C.D. Cal. 2005). see Pincay, 389 F.3d at 860 (stating that "we leave the

11  weighing of Pioneer's equitable factors to the discretion of the . . . court in every case"); Lowry

12  v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000) (stating that "[t]he four Pioneer

13  factors do not carry equal weight"), cert. denied, 531 U.S. 929 (2000).

14         Bingham represented USF&G through the hearing on September 1, 2009.[12]  The specific

15  Bingham attorneys responsible for representing USF&G in this case included Harold S. Horwich

16  ("Horwich") and Stephen M. Hryniewicz ("Hryniewicz").  It is undisputed that the Trustee's

17  motion seeking disallowance of Claim # 027551 and notice of the hearing on September 1, 2009,

18  were properly served on USF&G and its counsel.  Bingham admits that it received service of the

19  Trustee's motion and notice of the hearing on July 28, 2009 – 35 days prior to the hearing.

20  Bingham understood that a response to the Trustee's motion was due not later than August 18,

21  2009 – 14 days prior to the hearing.[13]  Hryniewicz testified that he "prepared a draft of USF&G's

22  opposition to the Trustee's Motion prior to the response deadline . . , and received comments on

23  _____

24  [12] According to its webside www.bingham.com, Bingham "offers a broad range of market-
   leading practices focused on global financial services firms and Fortune 100 companies,"
25  employing "1,100 lawyers in 12 locations in the U.S., U.K. and Asia."

26  [13] LBR 3007-1(b)(3)(A) states that "[a] response must be filed and served not later than 14 days
27  prior to the date of hearing set forth in the notice.".

the draft from Harold Horwich, who was the partner supervising the matter."[14]  Bingham neither

filed a response nor appeared at the hearing.[15]

In its motion, USF&G claims that Bingham's neglect was excusable because it failed to

file opposition to the Trustee's motion and failed to appear at the hearing "solely because of the

error of one individual in personal crisis which so overwhelmed him such that it utterly

eliminated his ability to function or even seek help."[16]  That individual was Hryniewicz.[17]  Later

in the motion, however, USF&G characterizes Hryniewicz's personal issues in August 2009

simply as one of three contributing factors leading to Bingham's failure to file opposition and

appear at the hearing – another contributing factor being Hryniewicz's other duties at Bingham.[18]

The critical factor, according to USF&G's motion, was Hryniewicz's reasonable reliance on a

likely continuance due to what he perceived as ongoing settlement negotiations with Trustee's

counsel.[19]  The Trustee admits that settlement overtures had been made to USF&G since May

---

[14] Declaration of Stephen M. Hryniewicz, paragraph 29, line 1.

[15] LBR 3007-1(b)(3)(B) states that "[i]f a response is not timely filed and served, the court may grant the relief requested in the objection without further notice or hearing." LBR 9013-1(h), which is incorporated into LBR 3007-1 by LBR 3007-1(a)(1), further states that "[p]apers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be."

[16] Motion of United States Fidelity and Guaranty Company, USF&G Specialty Insurance Company, and Fidelity and Guaranty Company for Reconsideration of Order Disallowing With Prejudice Claim # 027551 ("Motion"), p.1, l.6-8 (emphasis added).

[17] Hryniewicz testified regarding the personal matters that required his attention during the months of July and August 2009 in a separate declaration filed under seal with the court.

[18] Motion, p.8, l.10-14.

[19] But in its reply, USF&G returns to its original argument that Bingham's neglect given Hryniewicz's personal problems was excusable because "Hryniewicz' failure to oppose the Trustee's Motion was due to his own emotional meltdown" and that his "utter failure to act was unforeseeable by USF&G." Reply in Support of Motion of United States Fidelity and Guaranty Company, USF&G Specialty Insurance Company, and Fidelity and Guaranty Company for Reconsideration of Order Disallowing With Prejudice Claim # 027551, p.1, l.23-26 & p.8, l.16-

1  2007 in an effort to resolve the Trustee's objections to its claim, but denies that any settlement

2  offer was pending after July 8, 2009.  The Trustee further asserts that his attorney, David L.

3  Neale ("Neale"), advised Hryniewicz at least twice in response to Hryniewicz's telephone calls

4  after the Trustee's motion was filed on July 23, 2009, that the Trustee was not willing to extend

5  USF&G's response deadline nor continue the hearing on September 1, 2009: (1) By email to

6  Hryniewicz on August 19, 2009, after receiving Hryniewicz's telephone call on August 18, 2009

7  – the day the response was due; and (2) by telephone on August 31, 2009, in response to

8  Hryniewicz's telephone call on August 31, 2009 – the day before the hearing.  "Perhaps without

9  adequate foundation and confirmation, perhaps overly reliant on past practice and course of

10 dealing with the Trustee's counsel, and perhaps overly confident that a settlement was at hand,

11 but nevertheless based upon the prior history and course of dealing of the parties over several

12 years," USF&G reasons, "Hryniewicz assumed and believed that the hearing on the Trustee's

13 Motion would be continued and the response deadline would be extended."[20]

14        A.  <u>Danger of Prejudice to the Debtor</u>

15        USF&G argues that relief from the Order will not "have any material impact on the

16 Bankruptcy Proceedings or cause any prejudice to other creditors" because the Debtors' cases

17 have been pending for years and the Trustee has yet to complete either a liquidation of the

18 estate's assets or objections to claims.[21]  "To be prejudicial, the setting aside of a judgment must

19 result in greater harm than simply delaying resolution of the case.  Rather 'the standard is

20 whether [plaintiff's] ability to pursue his claim will be hindered.'"  <u>Knoebber</u>, 244 F.3d at 701

21 (quoting <u>Falk v. Allen</u>, 739 F.2d 461, 463 (9th Cir. 1984)).  "[T]he delay must result in tangible

22 harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud

23 or collusion."  <u>Thompson v. Am. Home Assurance Co.</u>, 95 F.3d 429, 433-34 (6th Cir. 1996).  If

24
25 17.

26 [20] Motion, p.7, l.18-23.

27 [21] Motion, p.11, l.12-23.

1  granting relief "merely restores the parties to an even footing in the litigation," there is no danger

2  of prejudice to the non-moving party. Knoebber, 244 F.3d at 701; see Bateman, 231 F.3d at

3  1224-25 (concluding that prejudice arising from delay of final adjudication is insufficient to deny

4  Rule 60(b) relief).

5      Based upon the court's order disallowing USF&G's Claim # 027551, the Trustee has

6  estimated the total amount of funds available for distribution to unsecured nonpriority creditors

7  and made a distribution on account of allowed claims.[22]  The Trustee has incurred the time and

8  expense of preparing a further distribution to creditors within 90 days.  Distributions to over

9  30,000 claimants must be recalculated if the distribution is deferred.[23]  Reconsideration would be

10  prejudicial to the Trustee and delay final administration of the estate.  Cf. Sentry Fin. Serv. Corp.

11  v. Pitrat (In re Resources Reclamation Corp. of Am.), 34 B.R. 771, 773 (9th Cir. BAP 1983)

12  (finding no prejudice in vacating an order disallowing a claim where no distributions had been

13  made to creditors).  Because the estate will sustain tangible harm as a result of the delay, the

14  court weighs this Pioneer factor narrowly in favor of the Trustee.

15      B.  Length of the Delay and its Potential Impact on Judicial Proceedings

16      USF&G's opposition was due on August 18, 2009.  Its motion for reconsideration was

17  filed on September 29, 2009.  The length of the delay was 42 days.  The Trustee argues that

18  USF&G's delay is not limited to 42 days, but "spans over a period of years" during which the

19  Trustee has "spent more than $185,000 in attempting to resolve the USF&G Claim and the

20  Amended Claim and any further litigation would prove to be costly and time-consuming."[24]

21

_____

22  [22] Declaration of Robert A. Coco, p.5, l.20.

23  [23] Id. at p.6, l.7-13.

24  [24] Joint Objection of the Trust for Certain Creditors of Consolidated Freightways Corporation
25  and Certain Affiliates and the Oversight Committee to Motion of United States Fidelity and
    Guaranty Company, USF&G Specialty Insurance Company, and Fidelity and Guaranty Insurance
26  Company for Reconsideration of Order Disallowing with Prejudice Claim No. 027551 ("Joint
27  Objection"), p.36, l.5-9.

- 16 -

1   While this point might be relevant to the first prong of the <u>Pioneer</u> analysis, there is no specific

2   allegation of impact on the proceedings apart from the delay itself. <u>See, e.g.</u>, <u>Pincay</u>, 389 F.3d at

3   859 (affirming a district court's finding of excusable neglect where the delay in question was less

4   than 30 days and there was no evidence of prejudice to the non-moving party); <u>Harvest v. Castro</u>,

5   531 F.3d 737, 747 (9th Cir. 2008) (stating that a 64-day delay was substantial given "an actual

6   possibility of prejudice" to the non-moving party).

7        On the other hand, USF&G's failure to oppose the Trustee's motion, or to timely request

8   an extension of time, has affected this court's administration of justice. The court studied the

9   Trustee's motion without the benefit of USF&G's response or argument in opposition, examined

10  the record, conducted legal research, prepared detailed findings of fact and conclusions of law,

11  and stated its findings and conclusions on the record at the hearing on September 1, 2009, to

12  adjudicate the motion. Now with the benefit of the court's earlier determination, USF&G by its

13  motion for reconsideration is asking the court to engage in this process a second time solely to

14  evaluate its arguments on the motion. Given the impact on the orderly administration of this case

15  and the fact that the court addressed the merits of the dispute between the parties, the court

16  concludes that this factor cuts both ways in the equitable analysis.

17       C. <u>The Reason for the Delay, Including Whether it was Within the Reasonable Control of</u>

18  <u>the Movant</u>

19       Hryniewicz's own testimony belies the notion that his "failure to oppose the Trustee's

20  Motion was due to his own emotional meltdown."[25] Hryniewicz admits that he was working on

21  other matters for Bingham's clients during the months of July and August 2009. Hryniewicz

22  testified that he was "part of a team of Bingham lawyers . . . representing the Official Committee

23  of Unsecured Creditors in the bankruptcy proceedings of LandAmerica Financial Group, Inc.," in

24  which he participated in two mediation sessions in July and extensive negotiations regarding the

25

26  _____

27  [25] <u>See</u> footnote # 19, <u>supra</u>.

- 17 -

1  terms of a proposed disclosure statement and plan of liquidation in August.[26]  Hryniewicz also

2  "spent significant time in July and August of 2009 preparing for a mediation that was scheduled

3  for the second week of September 2009, relating to litigation pending in Florida involving claims

4  surrounding the collapse of the housing market."[27]  According to Hryniewicz:

5      The combination of a difficult workload combined with the distractions caused by
       personal issues in August caused me to lose focus on the pleading deadline and hearing
6      date in this matter.  I mistakenly relied on my understanding from my conversation with
       the Trustee's counsel that he would contact me with the Trustee's decision on whether to
7      agree to an extension and a continuance.  I mistakenly proceeded on the erroneous
       assumption that an extension and a continuance would be consented to by the Trustee and
8      would be acceptable to the Court.  Although in hindsight I should have confided in the
       partners who worked with me about my situation and should have requested assistance
9      from other attorneys in responding in this matter, I did not do so.[28]

10  Neglect is not excusable simply because an attorney is busy on other matters.  See, e.g., United

11  States v. Fraya, 170 F.R.D. 346, 349 (D. Puerto Rico 1997) ("The ability to manage multiple

12  cases simultaneously, to comply with numerous filing dates, and to manage secretarial and

13  administrative staff in accordance with good personnel practices, is key to exercising the

14  profession of attorney."); McDermott v. Lehman, 594 F. Supp. 1315, 1319 (D. Me. 1984) ("The

15  mere fact that an attorney is busy on other matters does not excuse a neglect on his part for the

16  purposes of Rule 60(b).").  The issue boils down to whether Hryniewicz's assumptions

17  concerning an extension of time to respond to the Trustee's motion and a continuance of the

18  September 1, 2009, hearing were reasonable.

19      It is undisputed that the Trustee's motion seeking disallowance of Claim # 027551 and

20  notice of the hearing on September 1, 2009, were properly served on USF&G and its counsel.

21  Hryniewicz admits receiving the Trustee's motion and notice of the hearing on July 28, 2009 –

22  35 days prior to the hearing.  Hryniewicz understood that a response to the Trustee's motion was

23  due not later than August 18, 2009.  Horwich understood that a response was due as well, having

24  ────────────────────────

25  [26] Declaration of Stephen M. Hryniewicz, p.8, l.18-p.9, l.7.

26  [27] Id. at p.9, l.8-10.

27  [28] Id. at p.9, l.12-20.

1    asked Hryniewicz in mid-August to provide him with a draft of the response.[29]  Hryniewicz

2    prepared a draft of USF&G's opposition to the Trustee's Motion and received comments on the

3    draft from Horwich.

4          Neale testified that Hryniewicz contacted him by telephone at approximately 5:00 p.m. on

5    August 18, 2009, requesting an extension of time to file opposition to the Trustee's motion.

6    According to Neale, Hryniewicz's "tone of voice was normal and conversational" and "[h]e said

7    nothing about any personal issues that were affecting his ability to perform."[30]  Neale told

8    Hryniewicz that he "was sure that the Trustee would not agree to any extension of the deadline to

9    respond to the Motion to Disallow the Amended Claim or to any further continuance of the

10   September 1, 2009, hearing," but that "if USF&G made a settlement offer that the Trustee

11   believed indicated a good faith interest in resolving the parties' disputes, the Trustee might be

12   willing to continue the hearing to allow settlement negotiations to proceed."[31]  Neale further

13   testified that, after receiving USF&G's settlement offer by email from Hryniewicz at

14   approximately 2:00 p.m. on August 19, 2009, he spoke with "Hryniewicz and confirmed that the

15   Trustee was <u>not</u> willing to extend USF&G's objection deadline or continue the hearing on the

16   Motion to Disallow the Amended Claim."[32]  During their discussion, Hryniewicz advised Neale

17   that he intended to file USF&G's response to the Trustee's motion "that same evening."[33]

18         Neale testified that Hryniewicz contacted him by telephone at approximately 5:00 p.m. on

19   August 31, 2009, again requesting a continuance of the hearing on the Trustee's motion set for

20   the following day.  Neale advised Hryniewicz that "the Trustee's position had not changed and

21

---

22   [29] Declaration of Harold Horwich, p.2, l.14-16.

23   [30] Declaration of David L. Neale, p.6, l.19-p.7, l.1.

24   [31] Id. at p.7, l.26 to p.8, l.7.

25   [32] Id. at p.8, l.23-26.

26

27   [33] Id. at p.9, l.3-4.

1   that he would not agree to a continuance of the September 1, 2009, hearing."[34]  In response,

2   Hryniewicz told Neale that he intended to file a response that evening and to appear at the

3   hearing the following morning.[35]  At no time, according to Neale, did Hryniewicz "indicate that

4   he had any personal issues that affected his ability to adequately represent USF&G."[36]

5   Hryniewicz neither filed the response nor appeared at the hearing.

6         Bingham employs in excess of 1,100 lawyers.[37]  At least four Bingham attorneys have

7   appeared for USF&G in this case: Matthew A. Lesnick, William Bates III, Horwich, and

8   Hryniewicz.  Horwich testified that his "partner, William Bates did not have substantive

9   responsibility for this representation" and that Hryniewicz was handling USF&G's representation

10  on this matter under his direct supervision.[38]  Horwich claims that he understood from

11  Hryniewicz that "some adjustment of the motion schedule was anticipated to enable the parties to

12  determine whether a settlement might be achieved," but his declaration is silent as to what steps,

13  if any, were taken to confirm whether deadlines were met by his associate.

14  

---

15  [34] Id. at p.9, l.11-13.

16  [35] At the hearing on September 1, 2009, Neale expected Hryniewicz or someone from Bingham
17  to be present.  When there was no appearance on behalf of USF&G, Neale explained to the court:

18      "Your Honor, we've received no response to our objection of claim.  Counsel as far as we
    can tell is not present in court or participating telephonically today.  They certainly knew
19      about the objection to claim.  Counsel for USF&G did discuss it with me.  And talked
    with me about the deadline for filing a response.  I spoke with him as late as yesterday
20      afternoon to ask what their intentions were for today.  I was told that they were going to
    be filing something late last night.  As far as I can tell, nothing has been filed on PACER
21      as of last night or this morning.  Counsel is not present here in court today and filed no
22      response to our objection."

23  Joint Objection, Exhibit G, p.261, l.18 to p.262, l.4.

24  [36] Declaration of David L. Neale, p.9, l.23-25.

25  [37] See footnote # 12, supra.

26  [38] Declaration of Harold S. Horwich, p.3, l.1-2.

27

1    Finally, this was not an isolated incident. On June 24, 2008, the Trustee filed an

2  objection to Claim # 24116.  USF&G responded to the objection.  The hearing was continued

3  four times over a 10-month period to permit USF&G to produce documents to corroborate its

4  claim.  Following USF&G's apparent failure to do so, the Trustee on March 27, 2009, served

5  USF&G with his First Set of Requests for Production of Documents.  USF&G did not comply

6  with the request.  On April 8, 2009, the court held a hearing on the Trustee's objection to Claim #

7  24116.  No one from the Bingham firm appeared on behalf of USF&G.  Trustee's counsel, Tania

8  M. Moyron, testified by declaration that she had received a telephone call from Hryniewicz the

9  night before the hearing requesting a continuance.[39]  The Trustee did not agree to a continuance

10  and Hryniewicz knew the hearing on the Trustee's objection to USF&G's Claim # 24116 was

11  going forward the next day.  Given no appearance by the Bingham firm on behalf of its client, the

12  court placed the matter on second call, and directed Trustee's counsel to contact Hryniewicz by

13  telephone, if possible, to determine whether USF&G intended to defend its claim.  Hryniewicz

14  then appeared telephonically later in the morning, apologizing "for not appearing in person" and

15  stating that he "got the scheduling confused."[40]  The court sustained the Trustee's objection,

16  disallowed Claim # 24116 without prejudice to USF&G's right to file an amended claim not later

17  than May 8, 2009, supported by documentation sufficient to satisfy the evidentiary requirements

18  of FRBP 3001(c), and ordered USF&G to respond to the Trustee's request for production not

19  later than April 24, 2009.  USF&G neither amended its claim with proper documentation nor

20  timely responded to the Trustee's discovery request as ordered by the court.[41]

21  _____

22  [39] Declaration of Tania M. Moyron, p.6, l.8-16.

23  [40] Joint Objection, Ex. D, p.222, l.6-9.  Before making his telephonic appearance, Hryniewicz
24  told Moyron "that he had been meeting with USF&G but had failed to arrange for counsel in the
    Bingham office in Los Angeles to attend the hearing."  Declaration of Tania M. Moyron, p.6, l 25
25  to p.7, l.1.

26  [41] USF&G had yet to respond completely to the Trustee's First Set of Requests for Production of
27  Documents, notwithstanding this court's order that it do so by April 24, 2009.  Declaration of

1    USF&G has not established that the delay was caused by circumstances beyond the

2  reasonable control of Bingham attorneys assigned to the case.  Hryniewicz's inattentiveness

3  caused him to miss court appearances repeatedly.  Hryniewicz made foolish assumptions

4  regarding extension of the deadline to file a response to the Trustee's motion and continuance of

5  the hearing on September 1, 2009.  USF&G offered no evidence of Bingham's procedures to

6  ensure that deadlines are met and court appearances are made nor evidence that such procedures

7  were followed by Hryniewicz or his supervising partner, Horowich, to ensure that USF&G was

8  properly represented.

9    USF&G argues that In re Enron, Inc., 325 B.R. 114 (Bankr. S.D.N.Y. 2005) is analogous

10  factually because the court in that case reconsidered its order disallowing a claim due to ongoing

11  settlement negotiations.  Id. at 121.  Enron is not controlling and is distinguishable on the facts.

12  In Enron, the debtor and claimant, International Paper Company ("International") sought to reach

13  a global settlement of International's proof of claim for damages caused by Enron's rejection of

14  two power supply contracts and Enron's claim for certain accounts receivable due by

15  International.  The negotiations went unabated between the parties for a period of five months

16  between August 5, 2003 and February 20, 2004, during which time an order was entered

17  disallowing International's claim due to its failure to file a response or to attend the hearing on

18  Enron's objection.  The court granted reconsideration, finding minimal prejudice to Enron and

19  concluding that "the evidence supports a finding that International did not act deliberately in

20  allowing the Order to be entered because it did not know that a hearing on an objection to its

21  claim was proceeding." Id. at 120.  In this case, the court has determined that the estate will

22  sustain tangible harm if reconsideration is granted and that Hryniewicz either knew or should

23  have known in the exercise of reasonable diligence that a response to the Trustee's motion was

24  due not later than August 18, 2009, and that the hearing on September 1, 2009, would not be

25  continued.

26  _____

27  Kerry K. Morgan, p.61, l.14 to p.63, l.7.

- 22 -

"Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." Easley v. Kirmsee, 382 F.3d 693, 698 (7th Cir. 2004). Therefore, the court weighs this factor heavily in favor of the Trustee.

D. Whether the Movant Acted in Good Faith

There is no basis in the evidence to find bad faith or gamesmanship to the actions of USF&G or its counsel in failing to either respond to the Trustee's motion or to attend the hearing on September 1, 2009. Hryniewicz and Horwich, the Bingham partner supervising the matter, may have "showed a lack of regard for [their] client's interests and the court's docket. But there is no evidence that [they] acted with anything less than good faith. [Their] errors resulted from negligence and carelessness, not from deviousness or willfulness." See Bateman, 231 F.3d at 1225.

The court concludes that the balance of equities weigh against granting USF&G's motion for reconsideration. The absence of bad faith and a significant delay do not trump an attorney's lack of diligence, particularly when reconsideration would prejudice the opposing party and unduly delay the administration of the bankruptcy case. The court ruled on the merits of the Trustee's motion, and the Trustee would be prejudiced if the relief was granted. Most importantly, however, the reason for the delay was within the reasonable control of USF&G's counsel, Bingham. While two factors tip in favor of USF&G, the court balances the totality of the Pioneer factors in favor of the Trustee and finds that USF&G has not discharged its burden to establish that its failure to timely respond to the Trustee's motion and to appear at the hearing on September 1, 2009, was the result of excusable neglect.

It is regrettable that USF&G may have missed an opportunity to defend the merits of its claim, but [c]lients must be held accountable for the acts and omissions of their attorneys." Pioneer, 507 U.S. 396; see Tango Music, LLC v. DeadQuick Music, Inc., 348 F.3d 244, 247 (7th Cir. 2003) ("If the lawyer's neglect protected the client from ill consequences, neglect would

1  become all too common.  It would be a free good." (quoting <u>United States v. 8136 S. Dobson St.</u>,

2  125 F.3d 1076, 1084 (7th Cir. 1997)).

3                 III.  CONCLUSION

4       For the reasons stated above, the court concludes that USF&G has not established

5  sufficient cause to vacate the Order entered on September 9, 2009.  Therefore, USF&G's motion

6  for reconsideration of the Order will be denied.  The Objecting Parties' request for an award of

7  attorneys fees and costs incurred in defense of USF&G's motion will also be denied.

8       A separate order will be entered consistent with this opinion.

9  Dated:  November 30, 2009.

10

                         PETER H. CARROLL
11                          United States Bankruptcy Judge

- 24 -

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

<u>NOTE TO USERS OF THIS FORM</u>:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)** **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)   <u>MEMORANDUM DECISION</u> was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  <u>11/30/09</u>  , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II. <u>SERVED BY THE COURT VIA U.S. MAIL:</u>** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III. <u>TO BE SERVED BY THE LODGING PARTY</u>**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                        **F 9021-1.1**

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):

- Gregory S Abrams    jbothell@askfinancial.com
- Franklin C Adams    franklin.adams@bbklaw.com,
  arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com;bknotices@bbklaw.com
- William Bates    bill.bates@bingham.com
- Catherine E Bauer    Catherine.Bauer@usdoj.gov
- Bradley D Blakeley    bblakeley@blakeleyllp.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Sandor T Boxer    tedb@tedboxer.com
- William S Brody    tpearsall@buchalter.com
- Peter C Bronson    pbronson@pbronsonlaw.com
- Richard W Brunette    rbrunette@sheppardmullin.com
- William M. Burd    wmburd@burd-naylor.com
- Catherine M Campbell    cmc@fczlaw.com
- Robert Carlton    bobc@sussmanshank.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Alan J Cohen    acohen@cohenlawla.com
- Jerome S Cohen    jsc@jscbklaw.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Theodore A Cohen    tcohen@sheppardmullin.com
- David J Cook    Cook@SqueezeBloodFromTurnip.com
- David J. Cook    cookdj@aol.com
- Joseph E Cotterman    jec@gknet.com
- Donald H Cram    dhc@severson.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9021-1.1**

| In re: | CHAPTER: |
| | |
| Debtor(s). | CASE NUMBER: |

- Jon L Dalberg    jdalberg@andrewskurth.com, mprokocki@lblawllp.com

- Melissa Davis    mdavis@shbllp.com

- Willis B Douglass    Willis.B.Douglass@irscounsel.treas.gov

- Richard T Egger    richard.egger@bbklaw.com

- Duane M Geck    dmg@severson.com

- Andrew A Goodman    agoodman@andyglaw.com

- Adam M Greely    agreely@galfinpasson.com

- Ann H Grosberg    hillary@hillarygrosberg.com

- Steven T Gubner    , ecf@ebg-law.com

- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com

- Sheri R Handel    sheribruin@yahoo.com

- Kenneth Hennesay    khennesay@allenmatkins.com

- Robert E Huttenhoff    rhuttenhoff@shbllp.com

- Jeff D Kahane    jkahane@duanemorris.com

- Daniel E Kenney    dkenney@hfdclaw.com

- Stuart I Koenig    Skoenig@cmkllp.com

- Solmaz Kraus    skraus@gibsondunn.com, skraus@gibsondunn.com

- John P Kreis    jkreis@attglobal.net

- Jeffrey A Krieger    jkrieger@ggfirm.com

- Lorraine L Loder    lloder@sbcglobal.net

- Michael S Lurey    michael.lurey@lw.com, colleen.rico@lw.com

- Daniel J McCarthy    dmccarthy@hillfarrer.com

- Ashley M McDow    amcdow@askfinancial.com

- Martin P Meyers    martin@sussmanshank.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

- Elissa Miller    emiller@sulmeyerlaw.com

- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

- John W Mills    jmills@kilpatrickstockton.com

- Richard M Moneymaker    rmm@moneymakerlaw.com

- Tania M Moyron    tmm@lnbrb.com

- Randall P Mroczynski    randym@cookseylaw.com

- Vicente Matias Murrell    murrell.vicente@pbgc.gov

- Alan I Nahmias    anahmias@prnlaw.com, jdale@mirmanbubman.com

- Jennifer L Nassiri    jennifer.nassiri@dlapiper.com, bambi.clark@dlapiper.com

- David L. Neale    dln@lnbrb.com

- Walter K Oetzell    woetzell@dgdk.com

- Mark Palley    mp@marionsinn.com

- Donna T Parkinson    donna@parkinsonphinney.com

- Penelope Parmes    pparmes@rutan.com

- Ronald B Pierce    ronald.pierce@sdma.com

- Steven G Polard    spolard@perkinscoie.com

- Kurt Ramlo    kramlo@skadden.com

- David M Reeder    david@reederlaw.com

- Michael B Reynolds    , kcollins@swlaw.com

- J Alexandra Rhim    arhim@buchalter.com, smartin@buchalter.com

- Kenneth B Rodman    ken@rodmanlaw.com

- Judith Runyon    jarunyon@sbcglobal.net

- Deborah J Saltzman    deborah.saltzman@dlapiper.com, bambi.clark@dlapiper.com

- Ronald H Sargis    candrews@hsmlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9021-1.1**

| In re: | CHAPTER: |
|--------|----------|
| Debtor(s). | CASE NUMBER: |

- Allan D Sarver    ADSarver@aol.com
- Mark C Schnitzer    mschnitzer@rhlaw.com
- Mark Shinderman    mark.shinderman@mto.com
- Ross A Spector    ross.spector@spectorandbennett.com
- Joseph L Steinfeld    jsteinfeld@askfinancial.com
- Katherine A Traxler    katietraxler@paulhastings.com
- Kim Tung    ktung@dgdk.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Joshua D Wayser    joshua.wayser@kattenlaw.com
- David Weinstein    dweinstein@richardsonpatel.com
- William E Windham    ezforms@sbcglobal.net
- Dennis Winters    winterslawfirm@cs.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9021-1.1